DUO–FLEX CORPORATION, Appellant,

v.

BUILDING SERVICE COMPANY and First National Building Corporation, Appellees.

BUILDING SERVICE COMPANY and First National Building Corporation, Appellants,

v.

DUO–FLEX CORPORATION, Appellee.

No. 20080.

United States Court of Appeals Fifth Circuit.

Aug. 22, 1963.

William H. Pavitt, Jr., Los Angeles, Cal., Howard E. Moore, Dallas, Tex., Smyth, Roston & Pavitt, Los Angeles, Cal., for appellant-appellee.

Tom Arnold, Houston, Tex., Wm. T. Wofford, Carlisle Cravens, Fort Worth, Tex., Arnold, Roylance & Harris, Houston, Tex., Wofford & Richards, Fort Worth, Tex., Paul E. Harris, Houston, Tex., for both defendants.

Charles L. Stephens, Cantey, Hanger, Johnson, Scarborough & Gooch, Fort

Worth, Tex., for defendant First National Building Corp.

Before HUTCHESON, GEWIN and BELL, Circuit Judges.

HUTCHESON, Circuit Judge.

These appeals are from the judgment of the district court that all five claims of the Stanley patent,[1] a combination patent for the construction of suspended acoustical ceilings, are valid but were not infringed by the defendants.[2] The plaintiff, holder of the Stanley patent, appeals from that part of the judgment holding that claims 2, 3, and 4 of the patent were not infringed by the defendants, and the defendants appeal from that part of the judgment holding the patent to be valid. The plaintiff alleged below, in essence, that the defendant Builders Service had wilfully infringed Stanley in the construction of two office buildings in Fort Worth, Texas, one of which is owned by the defendant First National Building Corporation.

The factual complexities of the case are exceeded only by the length, variety, and technicalities of the arguments advanced on both sides. We think, however, that the wheat may be readily separated from the chaff and summary disposition made of the case. We affirm the judgment insofar as it held Stanley valid but reverse insofar as it held that defendants had not infringed claims 2, 3, and 4.

Stanley discloses and claims a suspended acoustical ceiling construction. The ceiling is composed of sound absorbing, flat oblong tiles. These are supported so as to present a downwardly facing ceiling, by special hollow longitudinally extending main support members. That result is achieved in the following manner. The main support panel members are clipped to rigid metal C-channels which are, in turn, hung from the unfinished ceiling of a building by wires and clips in such a manner that a series of the main support members are disposed parallel to, and spaced from, each other. Each main support panel member is provided with an upwardly facing shoulder on the upper portion of each of its sides. Auxiliary support members, called T-splines, are laid transversely of the main support members, with their ends resting upon the upwardly facing shoulders of the main support members. The tiles are horizontally slotted along their side edges, and those slots receive the laterally extending portions of the T-splines. Thus, the tiles are directly supported by the T-splines, and the ends of those T-splines rest upon, and are thus supported by, the shoulders of the main support panel members. The slotting is so located that, when the ceiling is assembled, the tile face is flush with the lower faces of the main support panels.

The field is admittedly a crowded one. The prior art is at least partially disclosed by five patents introduced into evidence: Brown, Rader, Olson, Jacobson 667, and Jacobson 102. The pioneer patents have all expired. Rader, for example, dates back some sixty years and expired some thirty-five years ago. In holding the Stanley combination valid, the trial judge found that nine features distinguish it from the prior art: (1) simplicity and ease of installation; (2) easy removal and replacement of the tiles to the surface area above the tiles; (3) use of standard components T-splines and tiles; (4) a neat ceiling appearance; (5) adaptability to inclusion of lighting fixtures and air conditioning vents and ducts; (6) modular unit construction; (7) stability; (8) prevention of tile sagging; and (9) flush mounting of tiles to facilitate the sealing of rooms over vertical partitions. He found further, in essence, that Stanley was not anticipated by the prior art and that the subject matter of the invention as a whole would not have been obvious on the basis of the

1. No. 2,742,122.
2. For clarity, we shall refer to appellate-appellee, Duo-Flex Corporation, as plaintiff, and to Builders Service Co. and First National Building Corporation, appellees-appellants, as defendants.

prior art to a person having ordinary skill in the art.[3]

Warranting discussion here are only those arguments that the trial court erred in holding that the prior art did not anticipate Stanley, that the subject matter of Stanley is not obvious within the meaning of the statute,[4] and that Stanley was a patentable combination rather than a mere aggregation of old elements.

The two contentions relating to anticipation and obvious subject matter are based upon a detailed comparison of Stanley with the prior art. Essentially, defendants' principal effort is devoted to showing that with varying degrees of modification—all within the ordinary skill of the art—each of the prior art patents would disclose a system similar in structure and function to Stanley.

 It is, of course, settled that it "is not sufficient to constitute an anticipation that the device relied upon might, by modification, be made to accomplish the function performed by the patent in question, if it were not designed by its maker, nor adapted, nor actually used, for the performance of such functions." Topliff v. Topliff, 1892, 145 U.S. 156, 161, 12 S.Ct. 825, 827–828, 36 L.Ed. 658. Rather, anticipation by a modified prior art structure is shown only if the modification was suggested to a mechanic of ordinary intelligence. We might even concede that each of the elements of the Stanley combination is disclosed by the prior art, but such single revelation would not preclude patentability. Cameron Iron Works v. Stekoll, 5th Cir., 1957, 242 F.2d 17. The trial court did not err in finding that the Stanley combination was not anticipated by the prior art.

It appears to us that the thrust of the argument that the subject matter of Stanley is obvious is based primarily on hindsight. The fact is that the prior art was long extant before Stanley claimed his combination, but the invention,

---

3. The relevant findings as to the validity issue are as follows:

"8. The ceiling structure of the patent-in-suit comprises an arrangement of suspended main support panel members, auxiliary support members called "T-splines," and ceiling tiles, each being of particular specified character and having a described relationship to each other, whereby they cooperate to form an integral suspended ceiling structure.

"9. Each of the five claims of the patent-in-suit describes the invention in slightly different wording to cover the features of the invention.

"11. None of the ceiling structures shown or described in the prior art patents or publications placed in evidence by defendants attained all of these said features.

"12. None of the said patents other than the patent-in-suit discloses the exact structure of any of the five claims of the patent-in-suit.

"13. None of the claims of the patent-in-suit may properly be read upon the structures shown or described in any prior patent in evidence in this case.

"14. The difference between the subject matter described in each of the five claims of the patent-in-suit and what is disclosed by the prior art, as evidenced by the patents and publications cited and introduced into evidence by defendants, or otherwise described by any witness, or disclosed by other evidence, of defendants, are such that, at the time the invention of the patent-in-suit was made, the subject matter of said invention as a whole would not have been obvious to a person having ordinary skill in the art to which such subject matter pertains.

"15. Specifically, the invention of the Stanley patent-in-suit would not be obvious to any person having ordinary skill in the ceiling art in 1951 or 1952 (when the Stanley invention of the patent-in-suit was made), and having knowledge of the disclosures of the patents to Rader * * *, Brown * * *, Olson * * *, and two Jacobson patents * * *, and of the other patents and publications placed in evidence by defendants, or of any other structures in public use prior to 1952."

4. "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. * * *" 35 U.S.C.A. § 103.

now so obvious, was never made. Here, as in Diamond Rubber Co. of N. Y. v. Consolidated Rubber Tire Co., 1911, 220 U.S. 428, 435, 31 S.Ct. 444, 447, 55 L.Ed. 527, it may be said that:

> "Knowledge after the event is always easy, and problems once solved present no difficulties, indeed, may be represented as never having had any, and expert witnesses may be brought forward to show that the new thing which seemed to have eluded the search of the world was always ready at hand and easy to be seen by a merely skillful attention. * * *"

Confronted with an adverse finding of fact, the defendants have failed to establish that the finding was clearly erroneous

We think, further, that the defendants have shown no reason for reversal in their argument that Stanley is nothing more than an aggregation of elements contained in the prior art—that the parts of Stanley are only standard mechanical parts assembled to produce only expected results—and is hence invalid. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; see also Glikin v. Smith, 5th Cir., 1959, 269 F.2d 641. It is contended that Stanley simply covers a routine assembly of parts—tiles, cross-T "auxiliary supports," "main support," and, in claims 1 and 5, flat splines along the side of the main supports—and that Stanley's assembly of these parts performs no new function and exhibits no new feature; but, rather, each of the elements performs exactly the same function as it did in the prior art. The trial judge found that the integral Stanley assembly presents a number of results, or performs a number of functions, not theretofore produced or performed by the single elements of the assembly. We think it clear, from an examination of the combination and its constituent elements, that he was correct, in that Stanley produces a superior result to that theretofore produced by its elements or parts.

We are not unmindful of the defendants' contention that the trial court erred in giving effect to the statutory presumption of validity, inasmuch as Jacobson 667, Brown, and Rader were not cited to the patent examiner. We may concede that the presumption was to an extent weakened, Fritz W. Glitsch & Sons, Inc. v. Wyatt Metal & Boiler Works, 5th Cir., 1955, 224 F.2d 331, but, in the view that we take of the case, this does not call for reversal.

We have carefully considered the other arguments advanced by the defendants, and we find no cause for reversal. In the main, the issues were of fact, resolved against the defendants by the trial court, and its findings are not clearly erroneous.

■ We next consider the judgment of non-infringement. The plaintiff contends, essentially, that the trial judge drew erroneous conclusions from his basic fact findings,[5] and we agree. We may paraphrase the gist of the plain-

---

5. The relevant findings are as follows:
"29. The accused ceiling structure comprises the assembly of:
(1) main support bulb T members held in spaced parallel relationship, the spacing being alternatively a spacing for air conditioning grills and a spacing for ceiling tiles;
(2) cross T auxiliary support splines riding above shoulders of the tile-spaced alternative pair of said main support bulb Ts and being supported through the edge of the air conditioning grills by said shoulders;
(3) removable air conditioning grills dependent from the grill-spaced alternative pair of said main support bulb Ts;
(4) tiles in adjacent abutting pairs with (a) kerfs in the abutting end faces of said tile pairs, (b) substantial steps or lips along the non-abutting end faces of said tiles which steps overlap and are masked by a portion of said main support bulb Ts, but said steps performed no function of sealing; and (c) kerfs also in the transverse side faces of said tiles into which are embedded said cross T auxiliary support splines;
(5) flat splines embedded in said end face kerfs and riding upon the top of said cross T splines supporting the tile abutting edges with respect to each other

tiff's complaint here as: "What shall it profit a patentee that his patent is declared valid if his claims are so precisely read, the range of equivalence so narrowly confined, that piracy is rewarded for the cunningness of its dissimulation and the patentee is robbed of the fruits of his invention?" [6]

The accused structure—in all material respects, the same in both the Equitable

and supporting them upward from said cross T splines.

"30. The tile tongues of defendants' structure which extend over the shoulders of the main support panel assemblies do not effect any sealing of the ends of the tiles against said shoulders, and hence, do not perform the same function as the anti-breathing splines recited as elements in claims 1 and 5 of the patent-in-suit.

"31. The ceiling tile had no support on the tile lip of defendants' structure; and there was no air seal or anti-breathing function between such tile and tile lip. The clearance between the tile lip and the tile was enough to allow the insertion of a folded manila folder of the type commonly used in office files, and to permit the passage of cigarette smoke with ease.

"32. Claims 1 and 5 of the patent include among other limitations, detailed requirements of flat splines resting one longitudinal half upon the main support panel and half in tile kerfs at places where the accused structure has only a step. The function of these flat splines is to prevent breathing or air passage between the main support panels and the tile faces abutting the main support panels. No substantially similar arrangement is to be found in the accused structure, and breathing does readily occur between the accused structure's tiles and main support members.

"33. In the accused structure each tile is of length longer by a substantial step or lip than half the distance between the adjacent outermost side faces of the main support bulb Ts; or if they are viewed in pairs, the tile pairs are longer by two substantial steps or lips than the distance between the adjacent outermost side faces of the main support panels. These substantial step tile portions overlap and are masked by shoulders on said main support bulb Ts exactly to the same substantial extent as such tile portions overlap and are masked by shoulders of main support members in such prior art references as some embodiments disclosed in the two Jacobson patents 102 and 667 and Brown. These steps do not effect any anti-breathing air seal and are substantially different structures from flat splines.

"34. The tiles are at their ends where the pairs abut, supported into alignment with each other and supported above the auxiliary support cross Ts by the flat splines and hence the tiles are not solely supported by the cross T splines.

"35. The accused structure is supported by bulb Ts which are not hollow for any functioning purpose within the meaning of the patent-in-suit. A grill which can be removed without the tiles falling down covers the space between the grill-spaced pair of bulb Ts just as the tiles which can be removed without the grill falling down cover the space between the tile-spaced pair of bulb Ts. But neither tiles nor grill are support members, both are supported members only. The accused structure does not, therefore, have hollow support members.

"36. Defendants' cross Ts are identical in structure and use to T-splines shown in the prior art, and are admitted to have been stock items off the supplier's shelf, even prior to the date of the alleged invention.

"37. Defendants' support members—the bulb Ts which carry all the weight of the ceiling proper—are conventional standard-stock prior art members conventionally employed by defendants to support tile ceilings.

"38. Defendants' flat spline between two adjacent tiles is admittedly a stock item used in its pre-Stanley conventional manner by defendants.

"39. Defendants' grill for air conditioning passage, may not be a stock configuration, but was nevertheless a concept and item in ceilings prior to Stanley's work, and is used for the purpose and function of similar grills of similar configuration prior to Stanley.

"40. Defendants' 'furring C channels' from which the whole ceiling is suspended, is a pre-Stanley conventional standard part used by defendants in the pre-Stanley conventional, standard way for the pre-Stanley conventional standard purpose and result.

"41. Each of the three references, namely Brown 1,992,052, and Jacobson 2,667,667, and Rader 714,948, relied upon by defendants during trial, discloses a structure somewhat different from the disclosures applied by the examiner against the application that matured into the patent in suit."

6. Matthews v. Koolvent Metal Awning Co., 5th Cir., 1946, 158 F.2d 37, 38.

Savings Association Building and the First National Bank Building—may be said to differ from Stanley in that:

(1) the main support panel assemblies called for in Stanley are an integral unit, whereas the accused structure employs three separate pieces to make up a shouldered panel assembly which, however, has the same appearance and performs the same function as Stanley's;

(2) the bottom face of the grill portion of the main support panel assembly in the accused structure has holes in it so that it can serve as an air conditioning duct;

(3) the accused structure employs a tile assembly consisting of two twelve inch by twenty-four inch tiles set end to end and spliced together by means of a flat spline, the ends of which rest upon the flanges of the T-splines, whereas Stanley uses a single twelve inch by forty-eight inch rectangular tile to extend from one panel assembly to another on the T-splines; and,

(4) unlike Stanley, the unspliced ends of the accused structure's tiles have short overhanging lips or tongue extensions, protruding slightly over the side walls of the main support panel assemblies and above the shoulders thereof; but these tongue extensions do not rest on the panel assembly shoulders to provide any support for the tiles, the entire support for the tile assemblies being the T-splines.

The defendants' principal argument is, in essence, that the accused structure is drawn from the prior art, rather than from Stanley, that such modifications as were made in the prior art to produce the accused structure are suggested by the prior art itself, and that the similarities between the accused structure and Stanley are common to both Stanley and the prior art. But here, as in Guiberson Corp. v. Equipment Engineers, Inc., 5th Cir., 1958, 252 F.2d 431, 433, "it seems to us that [defendants'] arguments on non-infringement are no better than, but in effect present merely slightly different variants of, its arguments on patentability."

The trial judge was, we think, too much influenced by merely formal differences between Stanley and the accused structure—differences which do not preclude the accused structure's utilizing the advantages of the Stanley combination. Infringement was not, for example, avoided by the fact that the accused structure utilizes main support panels consisting of three pieces instead of constituting a single member; infringement is not avoided by making one element of a claimed combination, of a plurality of parts. Jeoffroy Mfg. Inc. v. Graham, 5th Cir., 1953, 206 F.2d 772. The resulting assembly was the equivalent of Stanley's main support panels.

Similarly, the fact that the tile assemblies of the accused structure extend so as to provide a small tongue or overhang above the panel assembly shoulder—tongues which do not serve to support the tile, as did the overhanging portions of the tile in some of the prior art patents, and which do not seal the space between the tile end and the panel assembly—does not avoid infringement. Those overhangs are simply the addition of an element to the Stanley claims. See Hayes Spray Gun Co. v. E. C. Brown Co., 9th Cir., 1961, 291 F.2d 319; Aluminum Co. of America v. Sperry Products, Inc., 6th Cir., 1960, 285 F.2d 911, cert. den., Firestone v. Aluminum Co. of America, 368 U.S. 890, 82 S.Ct. 139, 7 L.Ed.2d 87. The tile assemblies of the accused structure are of the same length as called for by Stanley in the exposed lower surface, and, since the tongues provide no support, the accused structure obtains one important advantage of Stanley: sole support of the tiles by the T-splines.

Elaborate discussion is unnecessary. We think it evident that in method of operation, structure, and function, the accused structure is the equivalent of Stanley.[7]

7. The doctrine of equivalents is fully discussed in Graver Tank & Mfg. Co. v. Linde Air Products Co., 1950, 339 U.S. 605, 608–609, 70 S.Ct. 854, 94 L.Ed. 1097.

The original specifications for the First National Bank Building described the ceiling system of the Stanley patent. Before quoting on the bid for the subcontract, Builders Service contacted the plaintiff in regard to the availability of its system and learned that it was available only through franchised dealers. Builders Service then quoted on a substitute system, but the terms of its subcontract required performance in accordance with the original specifications. It was only subsequently that Builders Service and the building's architect devised the accused structure in the hope of providing a less expensive alternative to Stanley. It thus appears that the defendants had both reason and opportunity to utilize the features of Stanley while making only *pro forma* changes, and this circumstance lends support to our conclusion on the infringement issue. See Thurber Corp. v. Fairchild Motor Co., 5th Cir., 1959, 269 F.2d 841.

That is not to say, however, that the *infringement* was necessarily willful. The trial court found that there "was no willful or deliberate intention on the part of any of the defendants to infringe any patent right of plaintiff." That finding was based upon the further finding that Builders Service received *bona fide* opinions from competent counsel that Stanley was both invalid and was not infringed by the accused structure, upon which opinions Builders Service could, and did, reasonably and in good faith rely. Without saying that the advice of counsel necessarily precludes further inquiry into the good faith of an alleged infringer, we agree with that finding.

We have carefully considered the other defenses urged by the defendants and conclude, upon an examination of the evidence and the findings and conclusions below, that the district court ·erred in holding that the accused structure did not infringe claims 2, 3, and 4 of Stanley.

The issue of attorneys' fees, raised on appeal, may be most satisfactorily handled on remand.

The judgment that Stanley is a valid patent is affirmed. The judgment that the defendants did not infringe claims 2, 3, and 4 of Stanley is reversed, with directions to enter a judgment of non-willful infringement. The case is remanded for further proceedings not inconsistent with this opinion.

Affirmed in part, reversed, remanded in part.