**Gene HIRS and Hydromation Engineering Company, a Michigan corporation, Plaintiffs,**

**v.**

**DeLAVAL TURBINE, INC., a Delaware corporation, and Reynolds Metals Company, a Virginia corporation, Defendants.**

**No. 66–389–Civ. T.**

United States District Court
M. D. Florida,
Tampa Division.

March 28, 1968.

Settle, Batchelder & Oltman, Southfield, Mich., and Shackleford, Farrior, Stallings & Evans, Tampa, Fla., for plaintiffs.

Bucklew, Ramsey & Stichter, Tampa, Fla., and George A. Smith, Philadelphia, Pa., for defendant.

## DECREE AND ORDER OF PERMANENT INJUNCTION

LIEB, District Judge.

This cause came on to be heard on December 12, 1967, and was heard by the Court, and the Court now having duly considered this cause on the pleadings, proofs, arguments and briefs submitted by the parties, it is therefore, upon consideration thereof,

Ordered, adjudged and decreed:

1. That the Temporary Injunction granted by this Court in its Order dated June 16, 1967, is hereby made permanent, with the exception that Plaintiffs are no longer required to give security therefor.

2. That a further Permanent Injunction is hereby adjudged and decreed the Plaintiffs, Gene Hirs and Hydromation Engineering Company, against the Defendant, DeLaval Turbine, Inc., enjoining and restraining the said Defendant, its officers, agents, representatives, employees, successors and all other persons in active concert and in participation with them, from directly or indirectly infringing upon Letters Patent Nos. 2,867,324, 2,867,325 and 2,867,326 heretofore granted Plaintiffs, and particularly enjoining the said Defendant from infringing upon Claims 1, 3 and 4 of said Letters Patent No. 2,867,324, Claim 11 of said Letters Patent No. 2,867,325, and Claims 6 and 7 of said Letters Patent No. 2,867,326.

3. That the assessment of damages, costs and attorneys' fees against Defendant shall be determined separately after the entry of this Decree.

4. That the issue of contempt of the Preliminary Injunction earlier granted by this Court shall likewise be deter-

mined separately after the entry of this Decree.

5. This is a final judgment herein disposing of all matters between the parties hereto and not herein reserved.

## OPINION

This is an action brought by the Plaintiffs, Gene Hirs and Hydromation Engineering Company, against the Defendants, DeLaval Turbine, Inc. and Reynolds Metals Company, for alleged infringement of certain patents. This Court has jurisdiction of the parties and the subject matter of this action. All objections as to venue have been waived. 28 U.S.C. §§ 1338, 1400(b).

Plaintiff, Gene Hirs, is the inventor and owner of Patents 2,867,324, 2,867,325 and 2,867,326, and Plaintiff, Hydromation Engineering Company, is an exclusive licensee under the three patents. Defendant, DeLaval Turbine, Inc., is accused by Plaintiffs of infringing certain claims of Patents 2,867,324, 2,867,325 and 2,867,326 by virtue of its manufacture and sale of its "Auto Media Type TC Filter." The action, as originally filed, also named Reynolds Metals Company as a Defendant by virtue of the use by Reynolds in its Tampa, Florida, plant of an "Auto Media Type TC Filter" sold to it by DeLaval. DeLaval agreed to assume the entire burden of the defense of this action before this Court and Reynolds was subsequently dismissed by stipulation.

Patents 2,867,324, 2,867,325 and 2,867,326 in suit relate to high capacity industrial filters. In general these filters are used to filter high volume flows of a contaminated fluid to remove contaminant particles and to return the filtered fluid for reuse.

Stated generally, the filters of the three patents employ a filter cloth which, during the filtering operation is clamped between an inlet chamber and an outlet chamber. Fluid to be filtered is fed under pressure into the inlet chamber and passes through the cloth into the outlet chamber, the contaminant particles being intercepted by the filter cloth. As the filtering operation proceeds, the amount of contaminant particles collected on the filter cloth steadily increases, thus imposing an increasing resistance or clogging effect on the fluid passing through the filter. This clogging effect in turn causes the pressure in the inlet chamber to increase. A pressure responsive switch is located to sense the pressure within the inlet chamber and is connected into a control circuit to initiate an automatic cloth replacement cycle when the inlet chamber pressure rises to a selected pressure representing an undesirable degree of clogging of the filter.

The filter cloth is supplied from a supply roll and the replacement cycle initiated by the pressure responsive switch involves the following sequential steps:

1. Stoppage of flow of fluid into the inlet chamber.

2. Drainage of fluid from the inlet chamber, preferably by introducing air under pressure into the inlet chamber to force the remaining fluid through the filter cloth.

3. Unclamping of the filter cloth by separating the two chambers.

4. Advancing the filter cloth to draw the dirty section clear of the chambers while simultaneously drawing a clean section of the filter cloth from the supply roll into position between the chambers.

5. Clamping the clean section of cloth between chambers.

6. Reinstating flow of contaminated fluid into the inlet chamber, thereby starting a new filtering cycle.

From the evidence introduced at the trial of this cause, the foregoing general description is equally applicable to the accused DeLaval "Auto Media Type TC Filter." The issue before the Court is whether the DeLaval Filter infringes certain claims of the three patents and whether these claims are valid and enforceable.

Plaintiffs assert infringement of Claims 1, 3 and 4 of Patent 2,867,324,

Claim 11 of Patent 2,867,325, and Claims 6 and 7 of Patent 2,867,326.

The pertinent claims of Patent 2,867,324 read as follows:

1. A fluid filtering apparatus comprising, a pair of frame members for interposition in a fluid flow line and having spaced opposed fixed surfaces, a filter medium disposed between said frame member surfaces, said filter medium passable between said surfaces for replacement of the filter medium, means operable to move said filter medium, a gasket between said surfaces clearing the filter medium during replacement and displaceable to close the space around the peripheries of the frame member surfaces to seal the joints between the surfaces and the filter medium after replacement thereof, means operable to displace said gasket, and a control responsive to predetermined movement of said filter medium to control said last-named means.

3. A fluid filtering apparatus comprising, a pair of frame members for interposition in a fluid flow duct and having opposed surfaces spaced apart in fixed relation, a filter media extending between the fixed opposed surfaces of said frame members and movable to replace the portion of said media between said frame members, a hollow gasket between the spaced surfaces of said frame members, said gasket inflatable to close the space between said surfaces and form fluid tight joints between said surfaces and said filter media, said hollow gasket deflatable to clear said filter member for unobstructed movement thereof to replace said portion, means operable to inflate said gasket, a valve controlling said means, said valve in one position effecting inflation of said gasket, and a second position effecting deflation of said gasket, a control responsive to predetermined increase in pressure on one side of said filter media portion to actuate said valve to said second position, and a control responsive to predetermined movement

of said filter media to actuate said valve to said one position.

4. A fluid filtering apparatus comprising, a pair of frame members for interposition in a fluid flow duct and having opposed surfaces spaced apart in fixed relation, a filter media extending between the fixed opposed surfaces of said frame members and movable to replace the portion of said media within the space between said frame members, a hollow gasket between the spaced surfaces of said frame members, said gasket inflatable to close the space between said surfaces and form fluid tight joints therebetween and with said filter media, said hollow gasket deflatable to clear said filter media for unobstructed movement thereof in replacement of the filter media portion, means operable to inflate said gasket, a control responsive to a condition of the fluid on one side of said filter medium, to actuate said means and deflate said gasket, means operable to move said filter media, a delayed action control controlled by said responsive control to delay movement of the filter media pending deflation of said gasket, and a control responsive to predetermined movement of said filter media operable to effect inflation of said gasket.

The pertinent claim of Patent 2,867,325 reads as follows:

11. In a liquid filtering apparatus, supporting means, a pair of vertically disposed separable conductors having communicating flow passages, a portion of a filter media disposed between said conductors forming substantially fluid tight joints therewith, the upper conductor having an inlet for liquid to be filtered and the lower conductor having an outlet for filtered liquid, feed means operable to feed said filter media along a path of travel to position a clean portion of the filter media between said conductors when said conductors are separated, a control controlling said feed means, a delayed action control operable to control separation of said conductors, and

a control responsive to pressure in one of said conductors mutually controlling separation of said conductors with said delayed action control.

The pertinent claims of Patent 2,867,326 read as follows:

6. In filtering apparatus, supporting means, a pair of vertically positioned separable liquid conductors between which a portion of a filter material is held and movable when the conductors are separated to replace the filter material portion, the upper of said conductors having an inlet for liquid to be filtered and the lower of said conductors having an outlet for filtered liquid, means to supply liquid to said inlet, a control responsive to a condition of the liquid in one of said conductors controlling said supply means to discontinue flow to said inlet, and means controlled by said control operable to force drain liquid from said upper conductor.

7. In filtering apparatus, supporting means, a pair of vertically positioned separable liquid conductors between which a portion of a filter material is held and movable when the conductors are separated to replace the filter material portion, the upper of said conductors having an inlet for liquid to be filtered and the lower of said conductors having an outlet for filtered liquid, means to supply liquid to said inlet, a control responsive to a condition of the liquid in one of said conductors controlling said supply means to discontinue flow to said inlet, and air pressure introduced into said upper conductor to force drainage therefrom and controlled by said control.

The Defendant has asserted and not waived the following defenses:

(1) The claims of Patent 2,867,324 are not supported by the disclosure;

(2) The claims of Patent 2,867,324 are limited by file wrapper estoppel;

(3) Patents 2,867,325 and 2,867,326 are invalid because of obviousness under 35 U.S.C. § 103;

(4) Plaintiff Hirs did not himself invent the subject matter of the asserted claims in Patents 2,867,325 and 2,867,326;

(5) The asserted claims of Patents 2,867,325 and 2,867,326 do not conform with the requirements of specification under 35 U.S.C. § 112.

 A patent is presumed to be valid and the burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting it. 35 U.S.C. § 282. Thus the plaintiffs need prove only ownership and infringement. In this case ownership has been stipulated.

On the question of infringement, the evidence shows and this Court finds that claim 11 of Patent 2,867,325, claims 6 and 7 of Patent 2,867,326, and claims 1, 3 and 4 of Patent 2,867,324 have been infringed.

Claim 11 of Patent 2,867,325 and claims 6 and 7 of Patent 2,867,326 employ "separable liquid conductors." The liquid conductors in the Hirs Patents thus are separable in that they may be moved physically relative to each other to unclamp the filter cloth between them in order to permit the cloth to be advanced. The Defendant claims that the Defendant's filter does not have these "separable liquid conductors", but rather, that its structure consists of a pair of opposed plates, which are fixed, the peripheries of which are sealed by an inflatable seal, and that fixed conductors of liquid are attached to these plates, and thus none of the plates or conductors is movable under any condition.

 In the accused DeLaval structure, the inflatable seal on one of the conductors is extensible or retractable with respect to the other conductor to provide the necessary separation to permit advancement of the cloth. This performs substantially the same function in substantially the same way as the Hirs structure. Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950); Samuelson v. Bethlehem Steel Co., 323 F.2d

944 (5th, 1963); Matthews v. Koolvent Metal Awning Co., 158 F.2d 37 (5th, 1947). The Court specifically finds that the "conductors" of the DeLaval filter are "separable" conductors within the meaning of the language of claim 11 of Patent 2,867,325 and claims 6 and 7 of Patent 2,867,326. Minor variations between the accused structure and the precise language of the claims in question do not prevent a holding of infringement. Graver Mfg. Co. v. Linde Co., supra; Samuelson v. Bethlehem Steel Co., supra; Up-Right, Inc. v. Safeway Products, Inc., 315 F.2d 23 (5th, 1963).

The Defendant alleges that Plaintiffs have failed to prove that Defendant's structure contained "a delayed action control operable to control separation of said conductors", as is claimed in Claim 11 of Patent 2,867,325. The Court finds, however, that the evidence was sufficient to show that Defendant's structure did contain said "delayed action control operable to control separation of said conductors."

Defendant also asserts that in reading claims 1, 3 and 4 of Patent 2,867,324, one finds that the DeLaval Filter employs an inflatable seal while the claims of plaintiffs call for a "gasket." Further, Defendant states that its accused structure does not possess "a control responsive to predetermined movement of said filter medium", but rather a timer operating independently of cloth movement. However, the overall effect in both Plaintiffs' and Defendant's arrangements is that a subsequent filtration operation is not initiated in either case until after the filter medium has been completely replaced. Defendant again is doing substantially the same thing in substantially the same way to accomplish substantially the same result.

This same conclusion is also reached when this Court considers the defense that the claims of Patent 2,867,324 are not supported by the disclosure.

The defense of file wrapper estoppel was raised in regard to claims 1, 3 and 4 of Patent 2,867,324. An invention is construed not only in light of its claims but also with reference to the file wrapper or prosecution history in the Patent Office. Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 33, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). However, this is only to limit the claims by distinguishing them from the prior art. It does not, however, require a complete disregard of the substance of the accused structure and the Court concludes that the defense of file wrapper estoppel has not been established.

The Defendant has also raised the defense of obviousness under 35 U.S.C. § 103 in regard to the claims of Patents 2,867,325 and 2,867,326.

The evidence presented shows that certain mechanical and operational aspects relevant to the Plaintiffs' Patents, in a very limited sense, were part of the prior art. However, the question is not quite as the Defendant stated it: whether conversion of a manual operation to mechanical operation represents something unobvious. The evidence is not that convincing. If one automates the prior inventions under the Dunmire and Crowley Patents, the result is only an automated Dunmire or Crowley.

The Permutit and Hardinge filters and certain publications were presented to show that automation was possible and did exist in the prior art. However, the publications only show that isolated control elements were available and the Permutit and Hardinge filters show that neither filter was applicable to the purposes of the filter in suit and neither had the mechanical elements in question here. Defendant's own expert witness, Dr. Brewer, admitted that none of the prior art was concerned with the problem confronting Mr. Hirs. A method of analysis, dissection and reassembly through hindsight always needs close scrutiny. Diamond Rubber Co. of New York v. Consolidated Rubber Tire Co., 220 U.S. 428, 435, 31 S.Ct. 444, 55 L.Ed. 527 (1911); Duo-Flex Corp. v. Building Service Co., 322 F.2d 94 (5th, 1963).

At best, one could only say that the elements of Plaintiffs' combination are disclosed singularly in the prior art. This, however, is not enough and, if the patented combinations would not have been obvious, then the patents are valid. United States v. Adams, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1946).

Furthermore, secondary considerations such as commercial success and prior recognition of Plaintiffs' patents by competitors are to be considered. Graham, et al. v. John Deere Co., 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). The degree of commercial success is attested by sales by Hydromation Engineering Company in the United States of about 760 patented filters since 1955, having a value of approximately $7,500,000. Also, systems sold in connection with these filters have a value of approximately $20,000,000 to $25,000,000. Foreign sales are in addition to these amounts, as are sales by other sub-licensees of Hydromation Engineering Company. Most of these filters were built under Patents 2,867,325 and 2,867,326. The Court finds that the patented filters have been a substantial commercial success.

Other competitors have recognized the patents in suit. Suits for infringement were filed by Plaintiffs against two infringing competitors and both of these cases were dismissed after these competitors ceased their accused activities.

Another competitor was enjoined by the United States District Court for the Eastern District of Michigan at Detroit in Civil Action No. 25,979 entitled Hirs et al. v. Detroit Filter and Engineering Co., which case involved Patents 2,867,325 and 2,867,326. This competitor was eventually licensed by Hydromation Engineering Company.

The Court finds that the patents in suit here have been afforded substantial recognition by others.

In the above-mentioned "Detroit case", Patents 2,867,325 and 2,867,326 were attacked as being obvious. There the Dunmire and Crowley Patents were offered along with other showings of control elements. The Court in that case held the Hirs Patents valid. By agreement, the complete record of this "Detroit case" has been made a part of the evidence in this case.

This Court concludes, after considering all the evidence, that Plaintiffs' patented combinations as defined by the claims in suit here would not have been obvious to one skilled in the art at the time they were made and Defendant's defense under 35 U.S.C. § 103 fails.

The Defendant further claims that Plaintiff Hirs did not himself invent the subject matter claimed and therefore Patents 2,867,325 and 2,867,326 are invalid under 35 U.S.C. § 102(f). The Defendant has failed to carry its burden in this defense. The only evidence was statements by Mr. Hirs that he received some help from friends in making the actual wiring connections in the wiring diagram. The situation here is as described in Deller's Walker on Patents, 2nd Edition, 1964, Vol. 1, pages 190 and 191, which states:

* * * Each case must depend on its own merits. But, when it is seen that the principle and object of an invention are complete without the suggestion, it is too much that the workman's suggestion should render the whole patent void even though the suggestion was of something calculated more easily to carry into effect the conception of the inventor.

The Court concludes that this defense was not proved.

The Defendant argues that the asserted claims of Patents 2,867,325 and 2,867,326 do not conform with the requirements of specifications under 35 U.S.C. § 112. The evidence fails to show any such deficiency but, rather,

shows that the overall combination regarded by Plaintiff Hirs as his invention is particularly and distinctly defined in the claims in question.

 The Court finds and concludes that United States Letters Patents 2,867,324, 2,867,325 and 2,867,326 are each valid and that Claims 1, 3 and 4 of Patent 2,867,324, Claim 11 of Patent 2,867,325 and Claims 6 and 7 of Patent 2,867,326 have been infringed by the devices made, used and sold by the Defendant and in question here.

Defendant's first counterclaim for a ruling of noninfringement and invalidity of each of the patents has not been proven and it is hereby dismissed.

Defendant's second counterclaim arising under the Anti-Trust Laws of the United States was waived by Defendant at the conclusion of its case and Summary Judgment for the Plaintiffs thereon is hereby granted.

As to damages, Plaintiffs allege that Defendant's infringement was with full knowledge of its patents in suit and also with full knowledge of the prior adjudication of validity of Plaintiffs' Patent Nos. 2,867,325 and 2,867,326 and such prior knowledge has been admitted by the Defendant in its answer. A final determination of whether such knowledge together with the remainder of Defendant's conduct amounts to "willful and deliberate" infringement by Defendant is delayed by the Court until after an accounting has been had, so that the full measure and extent of the infringement can be determined. The parties, in their Pretrial Stipulation, stipulated that the assessment of damages should be continued until after liability has been established. Plaintiffs, as the prevailing parties, should request an early hearing for the purposes of determining damages.

Plaintiffs are entitled to the injunctive relief sought.