**Harold Ladd PIERCE, Appellant,**

v.

**Herman MUEHLEISEN and Muehleisen Perlite Processing, Inc., Appellees.**

No. 14184.

United States Court of Appeals
Ninth Circuit.

Oct. 3, 1955.

Rehearing Denied Nov. 3, 1955.

Jamieson & Gabriel, Los Angeles, Cal., C. Julian Goodell, San Francisco, Cal., Albert L. Gabriel, Hamer H. Jamieson, Los Angeles, Cal., for appellant.

Robert M. McManigal, Los Angeles, Cal., Burns, Doane, Benedict & Irons, Wayne L. Benedict, James P. Burns, Washington, D. C., for appellees.

Before DENMAN, Chief Judge, and STEPHENS and ORR, Circuit Judges.

ORR, Circuit Judge.

Appellees filed an action in the trial court seeking a judgment declaring United States patent No. 2,501,962 (hereafter referred to as the Pierce patent) invalid. After trial duly had the trial court held the said patent invalid on several grounds, among which is non-invention. We think the finding as to non-invention is correct and the judgment should be affirmed on that ground.

The Pierce patent, here in issue, teaches a two-step process for commercial expansion of perlite, a glassy volcanic rock which, when expanded, forms material suitable for various commercial uses, that is, as a light weight concrete and plaster aggregate, for roof and wall slabs, for insulation, as a filler for paints. Its geological background is apparent from the definition of perlite offered in the Encyclopedia Americana, vol. 23, pages 606–607:

> "The strictly extrusive forms of granite composition are known as rhyolites (from the Greek word which means to flow), so called because of the flow-structure which is commonly developed in them. The rhyolites are rarely holocrystalline, containing nearly always more or less glass and occasionally consisting wholly of it. These entirely glassy forms of rhyolite are called obsidian. Perlite and pitchstone are varieties of obsidian. Occasionally the rhyolites are frothy in character, due to the rapid escape of steam resulting from the relief from great pressure. This form is known as pumice. Rhyolite is also called liparite because extruded abundantly from the volcanoes of the Lipari Islands."

Pierce developed what he describes as:

> " * * * a two step process for expanding perlite comprising the step of pre-heating perlite in a first zone maintained at a temperature and for a period sufficient to remove a portion of the combined water from said perlite, but insufficient to cause any apparent expansion thereof, and then introducing such preheated perlite into a second zone maintained at an expanding temperature to expand the perlite."

35 U.S.C.A. § 103 provides as follows:

> "A patent may not be obtained * * * if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. * * * "

The district court found that the scope of the art extends to various expansible materials other than perlite, the subject of the patent, and that the pre-heating step employed in processing such other materials constituted such "road signs" that the adaptation of the method to perlite was a routine task such as one skilled in the art might be expected to be able to perform. Anticipation by the prior art is a question of fact. Thomson Spot Welder Co. v. Ford Motor Co., 265 U.S. 445, 44 S.Ct. 533, 68 L.Ed. 1098; Reinharts, Inc., v. Caterpillar Tractor Co., 9 Cir., 85 F.2d 628, certiorari denied 302 U.S. 694, 58 S.Ct. 13, 82 L.Ed. 536.

The novelty which the Pierce process purports to introduce to the science of expanding perlite is the initial pre-heating stage in which the granulated ore is subjected to a temperature of from 600 to 1200° F. The exact heat and the proper method of time for exposure were left by the Pierce patent to experimental determination in accordance with the size and composition of the perlite granules.[1] Expansion of the perlite results from vaporization of the confined water accompanied by simultaneous softening of the perlite sufficient to permit the pressure of the water to expand the rock. The old one step process of expanding perlite caused frequent explosions due to premature or rapid expansion of the enclosed water vapor before the perlite had attained sufficient viscosity to expand rather than fissure. Pierce introduced his pre-heating step to remove a portion of the combined water before the expansion process, thereby enabling the perlite to expand uniformly, avoiding explosions and avoiding also the

---

1. As geologists treat it, perlite is a rock, not a mineral, and specimens of perlite exhibit a variety of chemical proportions within a limited range.

adherence of the product to the walls of the kiln. The method has been successful and has met with commercial acceptance.

There is substantial evidence to support the trial court's finding of anticipation by the prior art. The Pierce patent is entitled "A Process for Expanding Earth Materials." According to the patent the process is concerned with igneous rocks including mica, known as vermiculite, the volcanic glass type rocks, including the obsidians, perlites and volcanic ash (the latter being known as pumicite), clays and silica.[2] Thus the Pierce patent itself suggests the analogous character of the foregoing substances.

The trial court prepared a table which we find helpful as illustrating the relationship of perlite and the other glassy volcanic rocks.

### Chemical Composition of Expansionable Obsidians

| | Silica | Alumina | Combined Alkalies | Total Water (or ignition loss) | Calcium Iron and Manganese Oxides |
|---|---|---|---|---|---|
| Low Viscosity Obsidians | Over 74 | Over 12 | Under 5 | Under 2 | |
| High Viscosity Obsidians | Approx. 70 | Under 14 | Under 8 | Over 3 | (com- 3–4 bined) |
| Typical Perlite | 71.88 | 12.73 | 7.28 | 3.84 | |
| Typical Obsidian | 73.84 | 13.00 | 7.74 | 0.53 | |
| Typical Pumice | 70.38 | 15.82 | 7.80 | 3.62 | |
| Typical Pitchstone | 70.19 | 12.37 | 6.60 | 6.48 | 3.71 |

Expert testimony appears describing and comparing perlite and the foregoing materials and the comparative processing problems together with studies appearing in professional journals. The Pierce patent cites the foregoing materials and exemplified substances and the chart above set out evidences their

2. The following appears in the patent:
"It is well known that various materials will expand when subjected to carefully controlled heat. For example, certain types of mica may be expanded into a cellular mass and these mica type minerals are generally referred to as vermiculites. The expansible igneous rocks that have the most commercial value at present, however, are the volcanic glass type of rock of which perlite is the most commonly used form. These volcanic glasses obtain their crystalline form due to the presence of water of crystallization and when these rocks are carefully heated this water of crystallization may be converted to useful vapor that will expand the rock when the rock is in a plastic state due to heat. This perlitic rock is sometimes referred to as perlitic pitchstone and I have found that the types of perlite that have the major portion of their silica content combined as sodium aluminum silicate are the most satisfactory.

"While I have described my methods and apparatus as applicable primarily to perlite, it will be apparent that various types of expansible rock could be used therein. For example some forms of pumice or volcanic ash are only partly expanded and accordingly these may be preheated and expanded in the same fashion as the original volcanic glass. Also earth materials containing fusible clays may be expanded upon heating in accordance with my invention. For example, clay and silica may be pelleted by mixing water and oil therewith and these pellets may be heated to the calcining temperature of limestone * * *."

chemical relationship. Hence, the trial court's conclusion that processes successfully employed on the aforesaid materials would naturally suggest themselves to an investigator skilled in the art as possibly applicable to perlite finds substantial support in the evidence.

In the prior art we find the heating for expansion purposes of the foregoing analogous materials which practice the trial court found to be anticipatory.[3] There are eight separate findings of anticipatory developments in processing of analogous materials.

The trial court found that "Heinrich Romberg, in German patent 613,945 published May 28, 1935, teaches a two-step process embodying pre-heating and subsequent expansion at a higher temperature of obsidians and pitchstones." A summary of the evidence supporting this finding follows:

According to the expert testimony obsidian, using the term in its narrow sense,[4] like perlite, is glassy volcanic rock containing water and capable of expansion by controlled heating. The temperatures prescribed by Romberg and Pierce are comparable. Each was concerned with expanding an obsidian to produce a light weight aggregate.

The trial court found that "Andrew L. Gladney, in U. S. patent No. 2,021,956, November 26, 1935, discloses a two step process embodying preheating and subsequent expansion at a higher temperature of pumicite which is fragmented pumice." We summarize the evidence supporting that finding:

The expert testimony developed that the Gladney patent teaches a two step process for the expansion of pumicite, another volcanic glass, that the patent purports to relate to cellular stones, that perlite is a cellular stone, "that the preheating of both perlite and pumicite is done for the same reason, to prevent shattering in the second step." Both patents teach a preheating step to reduce water content. When considered in connection with the other processes discussed in the evidence, the Gladney process supports a cumulative finding of anticipation.

A further finding is that "Otto A. Labus, in U. S. patents 1,963,275 and 1,992,669 of 1935, teaches a two-step process embodying preheating at a higher temperature of vermiculite, and in patent 1,992,669 discloses a preheating gas temperature reaching 700 degrees F."

The trial court had before it evidence to the effect that vermiculite is another material exemplified in the Pierce patent. Also that the Labus patent contains the following statement: "To effect the desired puffing * * * it is well to preheat the granules to bring about the serviceable exfoliation throughout the entire masses of the particles."

The following finding also appears: "John F. Morgan, in U. S. patent No. 2,161,186, June 6, 1939, reduced the combined water content of silica hydrogel by preheating to 600 degrees F. before the expansion step." With reference to the Morgan process an expert testified: "In my opinion there is a strong analogy;

3. The finding is as follows:
"One skilled in the art could follow the road signs of the prior art and by routine experiment determine the conditions of temperature and time most suitable to particular perlite samples, and this is just what Pierce did.

"In so far as the Pierce patent is addressed to a two step process for the expansion of perlite, it merely teaches the application of an old process to analogous material with no change in the manner of application and without yielding a substantially different result."

4. The term "obsidian" is also used as a generic term denoting all glassy volcanic rock including perlite. If this be taken as the sense of the Romberg patent it directly anticipated Pierce. The district court heard expert testimony that the Romberg patent contained intrinsic evidence that the term "obsidian" as used therein was intended in the narrow sense. The phrase "obsidians and pitchstones" was used. Pitchstone is an "obsidian" in the generic sense of the word. The water contents discussed in the patent are within the range of the water content of obsidian rock, in the narrow usage of the term. We may assume such usage was intended.

both [perlite and silica hydrogel] are highly siliceous granular bodies, they are glassy, they are brittle, they are porous in structure, they contain combined water, and upon pretreatment and final heating they expand into a cellular fine-grained product suitable for insulation and as aggregate."

An article by E. S. Shepherd, a volcanologist, entitled, "Gases in Rocks and some Related Problems", American Journal of Science, 5th series, vol. 35-A (1938), pp. 325–351, is in evidence. The trial court correctly concluded that it suggested the whole program of Pierce's experiments "in his teaching that expansion of obsidians is a function of their water content." The Shepherd experiments indicate that control of perlite expansion can be accomplished by control of its water content.

Patent No. 1,583,521 of 1926 issued to Boynton and U. S. patent No. 2,430,601 of 1941 issued to Cleary, were found to teach a two step process of expansion of clay, a sedimentary expansible material, exemplified in the Pierce patent. Other prior art relied on relate to U. S. patent 2,322,581, 1943, for a preheating and subsequent expansion process applicable to glassy blast furnace slag, and U. S. patent 1,912,811, 1933, for preheating and subsequent expansion of limestone, wherein the preheating step is introduced to avoid "dangers of explosion and disintegration."

█ The foregoing substantially supports the finding that the prior art anticipated the Pierce process. The materials exemplified by Pierce in his patent have been the subject matter of prior patents teaching the science of pre-heating expansibles.

█ We do no more than recite a well established rule of law when we say the application of an old process to analogous material of foreseeably similar character is not a sufficient contribution to the science to justify the award of a patent monopoly. It is only the achievement of the inventive faculty, as opposed to the product of the exercise of ordinary professional skill, that entitles the researcher to a patent. 35 U.S.C.A. § 103, Mandel Bros. v. Wallace, 335 U.S. 291, 69 S.Ct. 73, 93 L.Ed. 12; General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402; see also, Standard Brands v. National Grain Yeast Corp., 308 U.S. 34, 60 S.Ct. 27, 84 L.Ed. 17; Paramount Publix Corp. v. American Tri-Ergon Corp., 294 U.S. 464, 55 S.Ct. 449, 79 L.Ed. 997; and, Pennsylvania Railroad Co. v. Locomotive Engineer Safety Truck Co., 110 U.S. 490, 4 S.Ct. 220, 28 L.Ed. 222.

Judgment affirmed.