**NASCO INCORPORATED, Plaintiff-Appellant,**

v.

**VISION–WRAP, INC., Defendant-Appellee.**

**No. 14928.**

United States Court of Appeals Seventh Circuit.

Nov. 2, 1965.

Howard T. Markey, Parker & Carter, Chicago, Ill., for appellant.

James P. Ryther, McDougall, Hersh & Scott, Chicago, Ill., for appellee.

Before HASTINGS, Chief Judge, and CASTLE and KILEY, Circuit Judges.

CASTLE, Circuit Judge.

Nasco Incorporated, plaintiff-appellant, the owner by assignment of Mead and Slagel U. S. Patent No. 2,973,131, brought suit in the District Court charging Vision-Wrap, Inc., defendant-appellee, with infringement. The defendant asserted invalidity of the patent and denied infringement. Following trial of the issues the District Court made and entered findings of fact and conclusions of law, and filed a memorandum of decision. The court found and concluded, in substance, that all claims of the patent are invalid as against prior art disclosures and, additionally, that defendant's accused structure is not an infringing device since it utilizes but one mem-

ber of a two member element recited in each of the patent's nine claims.

The patent in suit relates to a bag for liquid such as milk and more particularly to bags which may be utilized in securing samples of milk and the like, for test purposes. Plaintiff and defendant are competitors in the manufacture and sale of plastic bags which are primarily used for taking milk samples. Plaintiff's bag was developed by Harry A. Mead and Lamont Slagel after Mead had been requested by Harold J. Barnum in 1957 to develop an inexpensive plastic or polyethylene single service sample bag for use in taking milk samples. Barnum was concerned with problems arising in the collection of milk from dairy farms. A milk truck would pick up milk from each of a number of farms and load it into a bulk tank, the individual collections thereby losing their identity. Barnum developed a system whereby the truck driver would take a sample of milk at each stop for testing— enabling the tracing of any deficiency in quality to its source. Glass bottles were initially employed for taking the samples at individual farms but presented inherent problems. They were bulky for storage, breakage was frequent, and they had to be washed and kept sterilized. Bottle lids became loose, contaminated, lost and leak-prone. Barnum was desirous of substituting a single service plastic bag for glass bottles and thereby eliminating problems inherent in the use of the latter. He brought the problem of designing such a bag to Mead, listing the criteria to be met. The development of the patented bag resulted.

The bag, as developed by the patentees and produced by the plaintiff, is made from tubular material, such as plastic, heat sealed at the top and bottom, with a line of perforations forming a tear strip to permit the bag to be opened. The bag is supplied with an opening and closing means by virtue of which the bag, once opened, is adapted to remain in an open position while the sample of liquid is placed in it, and then, after rolling the top down over itself several times, the same means is utilized in closing and sealing the bag against leakage. Sterility of the bag may be assured in the process of manufacture and the perforations do not detract therefrom because of the adhesion of the walls of the material. The cost of the bag is so small that it need be used but once.

The opening and closing means are described in the patent specifications as being constituted of a "deformable" member, such as soft iron wire of small diameter, laid transversely at the top of the bag "preferably" on both sides, secured to the bag by a material such as adhesive tape, with both wire and tape extending beyond the sides of the bag to form tabs. When these side tabs are pushed inwardly the bag opens and the wire frame so formed affords stability to keep the bag open during the filling operation. Pulling on the tabs closes the opening and the transverse tape-secured wire is utilized to maintain the closure and seal the bag by folding the top down over itself several times and bending the side tabs inward.

The features of the structure so developed permitted the use of flexible polyethylene material to produce flat, easily stored, entirely enclosed, sterilizable bags providing means for accomplishing the four functions of opening the bag, filling it, closing and locking it in liquid-tight configuration, all without contamination from the fingers of the sample-taker. The bag so developed overcame the disadvantages inherent in the use of glass bottles, and it enjoyed commercial success.

Claims 1, 2 and 6 of the patent are typically representative and are set forth below.[1] Claims 1 through 5 recite and

I. 1. A bag for liquid, comprising front and rear walls connected at the side edges and closed at the bottom, said walls being formed of flexible material; and opening and closing means extending transversely of said bag adjacent the top thereof, said opening and closing means providing a laterally extending tab at each side and including a deformable member extending across each of the front and rear walls,

define the use of deformable members with a "kink" formed therein adjacent to the center of the bag. The specifications explain the function of the kink as facilitating the deformable members in bending at the center to produce a generally diamond-shaped opening. The use of a "kink" or "dimple" is omitted from the remainder of the Claims.

The bags as originally produced commercially employed the kinked wire called for in Claims 1 to 5, inclusive, but in 1961 the plaintiff added central pull tabs (not specified in any claim of the patent nor referred to in the accompanying specifications) [2] to the sides or faces of the bag for the purpose of bending the wire, and eliminated putting the kink in the wire from the manufacturing process. The center pull tabs provide an alternative and improved method of opening the bag.

Vision-Wrap was incorporated in 1962, and first marketed the accused product in 1963, selling at a reduced price. The bags manufactured and sold by the defendant also employ central pull tabs and their structure is identical with plaintiff's commercial product with the exception that defendant employs the deformable member on only one side of the bag, that is, it uses no wire under the tape on the other side.

The District Court, citing Pollak French Patent No. 1,100,511; Denton Canadian Patent No. 496,974; Denton U. S. Patent No. 2,873,905; and Heroux U. S. Patent No. 686,899,[3] concluded that all claims of the patent in suit are invalid because directed to an unpatentable aggregation of individually old elements, each of which functions in its expected manner, without producing any new or unobvious result, and because the differences between the subject matter of the claims and such prior art are such that the subject matter of the claims would have been obvious, at the time Mead and Slagel developed the patented structure, to a person having ordinary skill in the art. The court further concluded that no infringement existed because the scope of the claims of the patent in suit excludes defendant's structure since each claim is limited to the use of two deformable members, and for the further reason that the cancellation from the Mead and Slagel patent application of original Claim 1, which did not recite kinks and which did not require flexible tape in combination with each deformable member, estops plaintiff from resorting to the doctrine of equivalents.

The plaintiff contends in substance that the District Court's findings of anticipation in the prior art, obviousness, and file wrapper estoppel, are clearly

each said deformable member being provided adjacent the center of said bag with a kink extending outwardly with respect to the corresponding wall of said bag.

2. A bag as defined in claim 1, wherein said deformable members are formed of a material having the properties of soft iron, in being deformable and tending to maintain any configuration in which placed.

6. A bag for liquid, comprising front and rear walls connected at the side edges and closed at the bottom, said walls being formed of flexible material; and opening and closing means extending transversely of said bag adjacent the top thereof, said opening and closing means providing a laterally extending tab at each side and including a deformable member extending across each of the front and rear walls, a pair of strips of flexible material each having an adhesive surface on one side adhered to the respective front and rear walls of said bag, said strips being disposed in opposed relation and adhered together over the area of said tabs with the deformable members therebetween, said deformable members being formed of a material tending to maintain any configuration in which placed and thereby being adapted to hold the top of said bag open, and said strips being sufficiently flexible to permit said deformable members to hold the top of said bag open.

2. The use of pull tabs to open a container without touching the top edges, was old in prior art. Clement U.S. Patent No. 2,286,465.

3. Defendant had relied additionally upon Mills U.S. Patent No. 1,157,568 and Snyder et al. U.S. Patent No. 2,635,788. These patents disclose perforated tear strips for opening a sealed container.

erroneous, and its conclusions of invalidity and non-infringement result from the application of incorrect legal criteria.

■ The defendant offered no testimony, expert or otherwise, on the prior patent art. The appealed decision rests entirely on documentary evidence and physical exhibits. Consequently, the court's findings, in so far as they concern the use made of prior art, the nature of the improvement made over prior art, and the operational functions and characteristics of the patented structure and the accused device, are deprived of the degree of finality which would otherwise attach under Rule 52(a) of the Federal Rules of Civil Procedure (28 U.S.C.A.). We are in as good a position as the trial court to examine and evaluate the evidence and make the necessary determinations ourselves. Charles Peckat Mfg. Co. v. Jacobs, 7 Cir., 178 F. 2d 794, 802; Kiwi Coders Corporation v. Acro Tool & Die Works, 7 Cir., 250 F.2d 562, 568; Armour & Co. v. Wilson & Co., 7 Cir., 274 F.2d 143, 151–157; and Welsh Co. v. Chernivsky, 7 Cir., 342 F.2d 586, 588.

■ Of the prior art relied upon, Pollak French Patent No. 1,100,511; Heroux U. S. Patent No. 686,899; and Betner U. S. Patent No. 2,108,741, disclose and teach the use of a deformable member with extending tabs, over which transversely positioned member the top of a bag may be folded and the bag fastened closed by bending the tabs over the folded portion. The Denton Canadian patent discloses the use of a strip of semi-rigid material such as cardboard, glued around the mouth of an open top bag made of thin, flexible material to form a collar protecting the edges of the mouth. Offset recesses in each side of the collar are provided for spreading it open with the fingers so the bag can be filled. The Denton United States patent discloses a reinforcing strip of cardboard used as a "header" around the mouth of a bag made of thin, flexible material and extending beyond the width of the bag to form a tab on each side

which is used to support the bag on the parallel bars of a bag holder. The bars are positioned to compress the side edges of the header to bow it and thus open the bag and hold it open for filling. If the collar and the header of the respective Denton patents can be regarded as a deformable member utilized in the opening of a bag, nevertheless, neither the Denton patents nor Pollak, Heroux, nor Betner, singly or collectively, disclose the use of a deformable member to independently supply a stable configuration to maintain an open bag in that position for the purpose of filling, as well as to function as an opening, a closing, and a fastening means. The employment of a deformable member to independently maintain the mouth of an open bag in that position is not taught by any of the prior art relied upon, much less in the combination featured in the patent in suit which enables the utilization of economically produced, discardable, sterilized plastic bags to overcome the problems inherent in the use of glass bottles in the taking of samples of milk or other liquids for testing. Nor, in our opinion, does anything disclosed or taught by the prior art make such combination obvious. Combination patent claims must be considered as a whole. Cf. Welsh Co. v. Chernivsky, 7 Cir., 342 F.2d 586, 590–591.

■ Moreover, all of this prior art was before the Patent Office and the claims of the patent in suit were allowed over these cited references. Under such circumstances the presumption of validity arising from the issuance of a patent is greatly reinforced. It is well settled that where the alleged invalidity is based upon patents which were before the Patent Office and were rejected as an anticipation of the invention, the presumption of novelty and invention is greatly strengthened. Briggs et al. v. M & J Diesel Locomotive Filter Corp., 7 Cir., 342 F.2d 573, 576; Ekstrom-Carlson & Co. v. Onsrud Machine Works, Inc., 7 Cir., 298 F.2d 765, 768; Amp Incorporated v. Vaco Products Co., 7 Cir., 280 F.2d 518, 521.

We conclude that the District Court erred in holding the patent in suit invalid. In reaching this conclusion we have considered, but reject, the defendant's contention that the failure of the applicants to inform the Patent Office that bags employing a deformable member on one side only could operate in substantially the same way as bags employing two deformable members precludes enforcement of the patent against the defendant. The specifications, in the light of which patent claims are to be read (Scherbatskoy v. United States Steel Corporation, 7 Cir., 287 F.2d 552, 556), expressly state that a deformable member is placed "preferably" on both sides of the bag. And, no claim was amended or cancelled in order to provide a substitution of a requirement of a deformable member on each side of the bag rather than on one side only. There is no evidence of fraud or inequitable conduct invalidating the patent. Cf. Aerosol Research Co. v. Scovill Mfg. Co., 7 Cir., 334 F.2d 751, 756.

We turn to resolution of the issues presented by the court's holding of non-infringement. The record fully establishes that the defendant knew of the patent, was familiar with plaintiff's commercial product, and attempted to design around the patent. Defendant's accused structure employs a deformable wire member on only one side of the bag. Otherwise, it is identical with plaintiff's commercial structure in all material respects. The testimony and the physical exhibits establish that the utilization of the deformable member on only one side of the bag serves to accomplish the same result, albeit possibly in a slightly inferior manner, in substantially the same way as does the use of a deformable member on each side of the bag—the patentees' preferred form of their invention. One using the substance and essentials of a patented combination does not avoid infringement in such manner. The doctrine of equivalents evolved in response to this type of infringement (Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097; Kiwi Coders Corporation v. Acro Tool & Die Works, 7 Cir., 250 F.2d 562, 568) and is applicable here.

The cancellation of the applicants' original Claim 1 in the course of the prosecution of the patent application before the Patent Office, which original claim called for "a deformable member extending across each of the front and rear walls" of the bag, and the substitution of claims with limitations specifying the provision of a kink in the member and its being formed of material tending to maintain any configuration in which the member is placed, afford no basis in our opinion for a conclusion that the applicants so narrowed the scope of the claims as issued that they embrace only a structure employing a deformable member on each side of the bag. No claim specifying a deformable member on but one side of the bag had been presented and later cancelled or abandoned in order to secure the patent. No file wrapper estoppel which bars recourse to the doctrine of equivalents is presented by the record. Defendant's contentions in this respect are unpersuasive.

Defendant's omission of the kink specified in Claims 1 to 5, inclusive, of the patent in suit, avoids those claims but defendant's accused product does infringe upon claims 6, 7 and 8 of the patent. Those claims read directly on defendant's structure except for the quantity of one element—the number of deformable members employed—a non-critical factor. The District Court erred in holding Claims 6 to 8, inclusive, not infringed.

The judgment order of the District Court is therefore reversed and the cause remanded to the District Court.

Reversed and remanded.