**LING–TEMCO–VOUGHT, INC.,**
Plaintiff-Appellant,

v.

**KOLLSMAN INSTRUMENT CORPORA-TION,** Defendant-Appellee.

No. 179, Docket 30584.

United States Court of Appeals
Second Circuit.

Argued Nov. 15, 1966.

Decided Jan. 20, 1967.

Willis H. Taylor, Jr., New York City (Keith E. Mullenger and Pennie, Edmonds, Morton, Taylor & Adams, New York City, on the brief), for plaintiff-appellant.

Sidney G. Faber, New York City (Jerome M. Berliner and Ostrolenk, Faber, Gerb & Soffen, New York City, on the brief), for defendant-appellee.

Before LUMBARD, Chief Judge, and MEDINA and KAUFMAN, Circuit Judges.

MEDINA, Circuit Judge:

In this case Judge Rosling, in the Eastern District of New York, on a voluminous record and after a 19-day trial, held what we shall call the Fenske patent on a "Data Plotting and Indicating Device" invalid and not infringed by the accused devices of Kollsman Instrument Corporation. Ling-Temco-Vought, Inc., the assignee of United States Patent No. 2,-859,659, appeals. Judge Rosling's lengthy and reasoned opinion is reported at 149 U.S.P.Q. 168.

In the early 1950's it had become apparent that space age velocities of attacking or defending aircraft and the possibility of a swarm of missiles had rendered or would soon render obsolete the method of tracing the paths and locations of such aircraft and missiles by hand on a large plastic or other transparent screen. This method had many disadvantages, not the least of which was writing backwards with a grease pencil on the reverse side of the transparent screen, the time delay in recording the data transmitted by radar and otherwise, and the number of persons necessary to perform the operation of this system. The 1952 Hayek Patent No. 2,584,267 was never manufactured and there was no evidence that it was workable, but it did involve the conception of recording a trace of the incoming data on an opaque plate covered by removable material and transmitting the data to a screen by use of a projector. There is no doubt whatever that the development of the art in the Fenske patent solved the difficulties inherent in the Hayek device and provided a simple and relatively inexpensive method of projecting a clear image of the paths of a number of airplanes or missiles whilst at the same time preserving a permanent record. While the number and variety of patents cited as constituting the prior art is bewildering, the critical and decisive central issue in the case is whether, according to the provisions of 35 U.S.C., Section 103, as interpreted by the decision of the Supreme Court in Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed. 545, handed down on February 21, 1966, after Judge Rosling's disposition of this case, the solution of the problem, so vital to the defense of the United States, by Fenske was "obvious * * * to a person having ordinary skill in the art" in the light of Hayek. Applying the teaching of *Graham* we have reached the conclusion that Fenske's solution of the problem was not "obvious" within the meaning of the statute, and we reverse the finding of invalidity. It is fortunate, however, that Judge Rosling followed the approved procedure of deciding the question of alleged infringement. We agree with his reasoning that there was no infringement. As to one of the accused devices of Kollsman, which had proved to be a failure and was abandoned, Judge Rosling applied the *de minimis* doctrine. To the other accused device, because of the narrow limitation of the Fenske claims by the Patent Office, Judge Rosling applied the rule of file wrapper estoppel. We affirm these rulings of noninfringement.

## I. *The Prior Art.*

The problem which the Fenske patent and the prior art sought to solve was the visual presentation of the dynamic function of two coordinates, time and space, from data obtained from an external source, usually radar. Before the development of appellant's device, there were only two operative methods of displaying such data. The earliest method employed an ink pen to draw a line along graph paper with either the paper or the pen or both being moved in response to the data received. Devices of this character were wholly inadequate for reasons that need no elaboration. The other method is the one described above, that is to say recording by individuals by writing back-

wards with a grease pencil on the reverse side of a large transparent screen.

■ The basic patent on which the Fenske patent operates is Hayek, No. 2,-584,267 (1952). Apparently this invention remained a paper patent but even an unworkable patent is a part of the prior art. The Hayek device operated on the same principle as a slide projector. One such projector cast a background on the viewing screen, for example, the outline of the United States. Another projector was supposed to be used for each of the objects to be tracked. The slide in the projector was covered with an opaque but removable material and the path of the object was inscribed on the slide by a stylus. As the stylus moved across the slide, the line was inscribed by the removal of the coating and was cast on to the screen by the light source of the projector. The difficulty with the Hayek device was in the mounting which was used as a stylus carrier. Hayek visualized an opaque armature, similar to a phonograph arm and needle. But this armature, when inscribing, by pecking after the manner of a woodpecker, would be interposed between the slide and the light source and the shadow it cast would obliterate the trace on the viewing screen. Since the function which this device was to serve required that the plotted line both be continually evolved and always wholly in view, this defect made the Hayek device unworkable.

The Fenske patent solved this problem by abandoning the armature altogether. Instead, the stylus was mounted on a transparent plate such as glass or plastic which was larger than the slide so that the edges of the glass plate would not appear on the screen. This entire transparent plate placed in a position parallel to the plate covered with opaque removable material then became the carrier and did not obstruct the beam of light in the projector when it was inscribing.

In addition to Hayek, appellee relies on several additional supplemental references which it claims when taken together with Hayek fully anticipated the Fenske patent. The principal such patent was Henry, No. 1,119,597 (1914). The Henry patent was said to cover a slide which had upon it a single dot. This dot, when the slide was inserted in a projector, would appear on a background and when the slide was moved, the dot could be used as a pointer. The invention which the Henry patent actually covered was the means by which the slide could be moved and thus there is some doubt that it should be given any consideration whatever as a part of the pertinent art. Graham v. John Deere Co., 383 U.S. 1, 35, 86 S.Ct. 684, 15 L.Ed. 2d 744. Reading Henry for all that it is worth only shows a method of projecting superimposed images with one slide not completely interfering with the image produced from the other slide.

The Massinger patent, No. 2,508,413 (1950), concerns a method of marking a slide while it is under a microscope. Massinger placed a dome which might, but need not, be transparent under the slide and mounted a marker on the top of the dome. As a marker, Massinger suggested the letter "o" from a rubber stamp. The dome could then be moved about and raised to mark the slide.

A further reference relied upon by Kollsman was an unpatented improvement made by it on one of the old pen and paper indicators. One type of such device employed a continuous roll of paper which passed below a rectangular opening in the face of the instrument. The pen was attached to a metal plate which in turn was attached to the instrument at the top and bottom of the opening and moved horizontally. This plate wholly obstructed the view of the line being drawn. To alleviate this problem, Kollsman made a plate partially out of glass.

Kollsman cites other patents of more or less relevance to the question at hand but we think it is not necessary to consider them in any detail because the parties seem to agree that the references given above are controlling.

## II. *Validity.*

■ Under Sections 101 and 102 of the patent laws, an inventor is entitled to a patent if he discovers a "new and useful improvement" on a machine that was not "known or used by others." There can be little doubt that the Fenske patent satisfies the relatively liberal tests of these Sections. Section 103 indicates that Sections 101 and 102 prevent patentability only where the invention was "identically disclosed" by the prior art. It is abundantly evident that the use of a transparent plate as a carrier for a stylus to inscribe on a projector slide was not "identically disclosed" by the prior art.

The important issue on this appeal, then, is whether appellant's invention would have been "obvious" to a person having ordinary skill in the pertinent art. This Court has recently set out the reasoning to be employed in resolving an issue of obviousness under 35 U.S.C., Section 103, applying the teaching of Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684 (1966). Formal Fashions, Inc. v. Braiman Bows, Inc., Docket No. 30580, decided December 16, 1966, 369 F.2d 536.

We turn then to the differences between the references cited above and the Fenske patent. Claim 6, agreed to be typical, reads:

Data-plotting and projection-indicating means comprising a substantially transparent plot member provided with an opaque coating of removable material, a second substantially transparent member arranged in parallelism with the first member, a stylus carried by the second member in marking engagement with the removable material on the first member, means to move said members relatively to each other to cause the stylus on the second member to remove material from the coating on the first member and thereby form a transparent trace on the first member according to the directions of such movements, and means to direct a light beam through both the transparent member and the trace on the first member to illuminate the trace, and means to project an illuminated image of said trace.

It is clear that if the Fenske patent merely substituted one material for another and the substituted material performed in a readily predictable manner because of its well known properties that distinguish it from the formerly used material, appellant has a mere "substitution of materials" patent which is invalid. Pierce v. Muehleisen, 226 F.2d 200 (9 Cir. 1955); Goodwin v. Borg-Warner Corp., 157 F.2d 267 (6 Cir. 1946); Application of Mason, 240 F.2d 362, 44 CCPA 727 (1957).

■ But such is not our case. The Fenske patent employs a method of inscribing that is conceptually different from Hayek in its use of a transparent plate instead of an opaque armature. This conceptual improvement represents a sufficient advance over Hayek to be patentable. Rich Products Corp. v. Mitchell Foods, Inc., 357 F.2d 176 (2 Cir. 1966); Application of Hortman, 46 CCPA 814, 264 F.2d 911 (1959). And see United States v. Adams, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966).

■ Furthermore, while we have noted that an unworkable patent is a part of the prior art, the dormancy of the Hayek patent, as compared with appellant's success, provides some support for the validity of the Fenske patent. Pacific Contact Laboratories, Inc. v. Solex Laboratories, Inc., 209 F.2d 529 (9 Cir. 1953); Trabon Engineering Corp. v. Dirkes, 136 F.2d 24 (6 Cir. 1943); Ric-Wil Co. v. E. B. Kaiser Co., 179 F.2d 401 (7 Cir. 1950).

■■ To invalidate the Fenske patent, then, we must find in the prior art some teaching that a solid armature used for inscribing may be replaced by a transparent plate. Neither the Henry nor the Massinger patent serves this function. Neither of these patents con-

cerns data recording devices [1] or inscribing.

■ Kollsman's experts testified that as a supplementary reference they had no preference as between Henry and the other references. But the Patent Examiner had before him both the Hayek and the Henry patents. While the presumption of validity that a patent enjoys may be slight in the light of the normal procedures of the Patent Office, this presumption is heightened by a showing that the prior art was adequately considered. The Examiner paid sufficient attention to the Fenske claims to reject them in part based on the prior art before him and to make suggestions for alterations. Obviously, he concluded that the Fenske patent represented an advance. In view of this history that conclusion must be given some weight here. Nasco, Inc. v. Vision-Wrap, Inc., 352 F.2d 905 (7 Cir. 1965); Lyon v. Bausch & Lomb Optical Co., 119 F.Supp. 42 (W.D.N.Y.1953).

Nor do we think that appellee's substitution of a glass plate for a metal plate supporting an ink pen when taken with Hayek render the Fenske patent "obvious." Kollsman's device does show that an inking pen may be mounted on a glass plate, but it does not show that a transparent plate may be used to replace an opaque armature and it does not show the use of a transparent stylus carrier in a projection device.

■ In view of the file wrapper history we must construe the Fenske patent narrowly. Whether or not it is to be classified as a combination patent or an improvement patent or both is in this case largely a matter of semantics. As Judge Learned Hand phrased it in B. G. Corp. v. Walter Kidde & Co., 79 F.2d 20 (2 Cir. 1935): "All machines are made up of the same elements * * * But the elements are capable of an infinity of permutations, and the selection of that group which proves serviceable to a given need may require a high degree of originality. It is that act of selection which is the invention." See also Duo-Flex Corp. v. Building Service Co., 322 F.2d 94 (5 Cir. 1963); Doran Coffee Roasting Co. v. Wyott Mfg. Co., 267 F.2d 200 (10 Cir. 1959); Coleman Co. v. Holly Mfg. Co., 233 F.2d 71 (9 Cir. 1956); Application of Stewart, 42 CCPA 937, 222 F.2d 747 (1955). Whatever be the aggregate the whole must exceed the sum of the several contributing elements and that is precisely what the Fenske patent does. The concept of mounting a stylus on a moving transparent plate was previously unknown and this invention exceeds the sum of all the prior art. As said by Judge Anderson in an opinion reported at 132 F.Supp. 123, and sustained by this Court in Electric Pipe Line v. Fluid System, 231 F.2d 370 (2 Cir. 1956), "[a]lthough the Lines patent combines a number of known elements, the method of operation is new and the specific result achieved is new and beneficial." See also McCullough Tool Co. v. Well Surveys, Inc., 343 F.2d 381 (10 Cir. 1965); International Mfg. Co. v. Landon, Inc., 336 F.2d 723 (9 Cir. 1964); Technical Tape Corp. v. Minnesota Mining & Mfg. Co., 247 F.2d 343 (2 Cir. 1957).

In the *Formal Fashions* case, this Court observed that "[t]he proof on this issue [of obviousness], then, should tend to show what would be obvious to a hypothetical mechanic." It is apparent that the more numerous the references and the more remote the cited art from the subject matter of the patent in suit, the less likely it becomes that a person hav-

---

[1]. The mere fact that a cited reference is not drawn from the data projection field does not, however, remove it from the pertinent prior art, although under Section 103 there is some limit on how far afield a party may go in gathering the references relied upon as constituting the prior art. Cf. Graham v. John Deere Co., 383 U.S. 1, 35, 86 S.Ct. 684, 15 L. Ed.2d 545 (1966). Nevertheless, the more remote the reference from the subject matter at hand, the less persuasive it becomes on the question of obviousness. At some point, the bringing together of knowledge held in widely diverse fields itself becomes invention. United States v. Adams, 383 U.S. 39, 51, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966).

ing ordinary skill in the art would have arrived at the result reached by the patent in suit. Ric-Wil Co. v. E. B. Kaiser Co., 179 F.2d 401 (7 Cir. 1950); Application of Pennington, 44 CCPA 789, 241 F.2d 750 (1957).

In *Graham* the Supreme Court allowed that such secondary considerations as the need in the industry, unsuccessful research and commercial success might be utilized by the courts to "guard against slipping into use of hindsight" and "to resist the temptation to read into the prior art the teachings of the invention in issue." 383 U.S. at 36, 86 S.Ct. at 703. Of course, as the Supreme Court went on to hold, where the invention is minor and non-technical, such considerations are of little value but we think that in this suit where the components of sophisticated instruments are being interchanged and the result is a highly successful device of substantial importance to our national security, and therefore the incentive to invent is presumably high, such factors are appropriate for our consideration. See Rich Products Corp. v. Mitchell Foods, Inc., 357 F.2d 176 (2 Cir. 1966).

The patent in suit was granted in November, 1958, although demonstrations had been made prior to that date. By 1961, systems utilizing the Fenske patent had been installed in several missile ranges including White Sands and Cape Kennedy. Colonel Richard E. Barr who was responsible for recommending the installation of this device was awarded the Air Force Commendation Medal. Literature emanating from the military clearly demonstrates the great importance of this device and its usefulness to our defense effort. Perhaps, as Judge Rosling noted, the contribution of the Fenske patent to this system was not one of great magnitude. But without that contribution, the system would not work at all.

Finally, it is not without significance that, during the very pendency of this action, Kollsman, relying on the narrow scope of Claim 6 of the Fenske patent, proceeded to patent several devices, two of which copy the details of Fenske, except that in one the stylus is mounted on two ribbon thin plates of glass instead of the one prescribed in Fenske and in the other of which the stylus is supported by wires without the use of any plate at all. This is an awkward position from which to attack the validity of the Fenske patent. Kurtz v. Belle Hat Lining Co., 280 F. 277 (2 Cir. 1922); General Knit Fabric Co. v. Steber Machine Co., 194 F. 99 (2 Cir. 1912); United States Pipe & Foundry Co. v. James B. Clow & Sons, Inc., 205 F.Supp. 140, 157 (N.D.Ala. 1962).

### III. *Infringement.*

Soon after Kollsman learned of the successful operation of the Fenske patent, it set out to construct a similar instrument, as we have just indicated. With respect to the device with the two thin plates of glass, Judge Rosling found as a fact that the only public demonstration of this structure was to government representatives of the Bureau of Ships. While we have found the record somewhat ambiguous on this point (Compare page 1203 with pages 1331–32 of the trial record), we are bound by this finding as it is not clearly erroneous. Maytag Co. v. Murray Corp. of America, 318 F.2d 79 (6 Cir. 1963). That being the case, appellant's claim of infringement from these devices must fail. Under 28 U.S.C., Section 1498, no suit for patent infringement may be maintained against a government contractor for the use of a patented article without the permission of the patent owner.

On this appeal, appellant contests dismissal under Section 1498 by showing the wide range of non-governmental uses for which the instrument in question might allegedly be adapted. But Judge Rosling concluded, correctly we think, that the application of the *de minimis* doctrine was appropriate on the facts of this case and that appellee should not be deprived of its Section 1498 defense. Neff Instrument Corp. v. Cohu Electronics, Inc., 269 F.2d 668 (9 Cir. 1959); J. & G. Development Co. v.

All-Tronics, Inc., 198 F.Supp. 392 (E.D. N.Y.1961) and cases cited. It is conceded that no actual sales of the glass mounted stylus were made by Kollsman and the mere advertising of a patented device is not itself an infringement. Knapp-Monarch Co. v. Casco Products Corp., 342 F. 2d 622 (7 Cir. 1965). Further, Judge Rosling found that appellee's experimentation with the glass mounting was unsuccessful and that it has apparently permanently abandoned the use of such a device. Compare Northill Co. v. Danforth, 51 F.Supp. 928 (N.D.Calif.1942).

On abandoning its use of the glass mounting, appellee developed a wire stylus carrier. Two wires were stretched diagonally across a frame and the stylus was supported at the intersection of these crossed wires. These wires, while opaque, are defocussed and apparently do not appear on the viewing screen. Although we have held that the Fenske invention is patentable on the narrow ground that the act of replacing an opaque armature with a transparent plate was not obvious, appellant here asserts that the Fenske patent should be read broadly enough to include appellee's crossed wire carrier.

 This claim properly might be rejected by the plain words of the Fenske patent which claims only a "substantially transparent mounting plate" which is described as "a flat transparent sheet or plate of rectangular form * * * preferably made of a heat-resistant and nonshatterable material, such as Pyrex glass, or one of the clear plastics, such as Lucite." While it is undoubtedly true that patents are not to be read with undue strictness and that minor variations will not defeat a claim of infringement, Technical Tape Corp. v. Minnesota Mining & Mfg. Co., 247 F.2d 343 (2 Cir. 1957), Coats Loaders & Stackers, Inc. v. Henderson, 233 F.2d 915 (6 Cir. 1956), it is equally true that a patentee will not be heard to claim what he was forced to abandon to obtain his patent, Graham v. John Deere & Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), Shepard v. Carrigan, 116 U.S.

593, 6 S.Ct. 493, 29 L.Ed. 723 (1886), Texsteam Corp. v. Blanchard, 352 F.2d 983 (5 Cir. 1965).

 It is evident that if the patentability of appellant's invention depends on its being distinguishable from an opaque support, as we have held, the crossed wire support cannot be found to infringe the Fenske patent. Further, as it appears from the file wrapper that the inventor pressed this same distinction on the Patent Examiner, appellant is now estopped to assert equivalence. Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684 (1966); Doran Coffee Roasting Co. v. Wyott Mfg. Co., 267 F.2d 200 (10 Cir. 1959).

Reversed on the issue of validity of the Fenske patent No. 2,859,659, and affirmed on the issue of infringement.

IRVING R. KAUFMAN, Circuit Judge (concurring and dissenting):

I concur in the majority's finding of non-infringement, but I disagree with their conclusion that the Fenske device was not "obvious" within the meaning of 35 U.S.C. § 103. I believe it was clearly obvious. It is of some interest that my brother Medina would find the patent in dispute here not "obvious" so soon after his clear pronouncement of the principles to guide us in Formal Fashions, Inc. v. Braiman Bows, Inc., 369 F.2d 536 (2 Cir., 1966), where we declared a patent "obvious."

I.

A brief examination of the history of the "non-obviousness" requirement is essential if the problem is to be placed in its proper perspective. The doctrine had its beginning in Hotchkiss v. Greenwood, 52 U.S. (11 How.) 248, 13 L.Ed. 683 (1850) where the Supreme Court held a clay doorknob unpatentable, stating: "[U]nless more ingenuity and skill * * * were required * * * than were possessed by an ordinary mechanic acquainted with the business, there was an absence of that degree of skill and ingenuity which constitute essential elements of every invention. In other

words, the improvement is the work of the skillful mechanic, not that of the inventor." Id. at 267.

Despite the difficulty, or more appropriately stated, the impossibility, of defining "invention" with preciseness, see McClain v. Ortmayer, 141 U.S. 419, 427, 12 S.Ct. 76, 35 L.Ed. 800 (1891), this judge-made principle took years to become the troublesome doctrine which it did. It was widely believed that beginning in the 1920's the Supreme Court, and consequently the lower federal courts, applied the *Hotchkiss* test with increasingly greater stringency, and consequently many patents were held invalid. Indeed, many thought that the Supreme Court in Cuno Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58 (1941) had enunciated a new "flash of creative genius" test. The tone of that opinion, and others, gave credence to that view, although the Court purported to adhere to *Hotchkiss*. But the climate of judicial opinion had become inhospitable to patent monopolies, and Justice Jackson was finally moved to speak in dissent of the "strong passion in this Court for striking them [patents] down so that the only patent that is valid is one which this Court has not been able to get its hands on." Jungersen v. Ostby & Barton Co., 335 U.S. 560, 572, 69 S.Ct. 269, 274, 93 L.Ed. 235 (1949).

It was against this background that Congress enacted the Patent Act of 1952. The old requirements of novelty and utility, which were found in the first patent act of 1793, were retained, and to them was added the new statutory requirement that the subject matter must not have been obvious. That requirement, contained in 35 U.S.C. § 103, reads:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

The second sentence of section 103 was intended to abolish the "flash of creative genius" test, Graham v. John Deere Co., 383 U.S. 1, 15, 86 S.Ct. 684 (1966), and the Revisor's Note makes this clear beyond doubt.[1] But, the purpose of the first sentence was less plain, and the legislative history is contradictory.[2] And so the question arose whether Congress intended by section 103 to codify the "slow but steady drift of judicial decision that had been hostile to patents"[3] or to restore the pure *Hotchkiss* test. The Supreme Court resolved this question in Graham v. John Deere Co., supra, and companion cases—the only patent cases to reach the Supreme Court since the 1952 Patent Act. Justice Clark, writing for eight members of the Court,[4] commented that the *Hotchkiss* "standard has remained invariable in this Court," id. 383 U.S. at 19, 86 S.Ct. at 694, although sometimes "rhetorical embellishment," was added. Id. at 15, 86 S.Ct. 684, n. 7. The 1952 Act merely codified the "judicial precedents embracing the *Hotchkiss* condition * * *" and "was

---

1. The Revisor's Note to § 103 states in part: "The second sentence states that patentability as to this requirement is not to be negatived by the manner in which the invention was made, that is, it is immaterial whether it resulted from long toil and experimentation or from a flash of genius."

2. See Note, The Standard of Patentability —Judicial Interpretation of Section 103 of the Patent Act, 63 Colum.L.Rev. 306, 310–312 (1963).

3. Reiner v. I. Leon Co., Inc., 285 F.2d 501, 503 (2d Cir. 1960) (L. Hand), cert. denied, 366 U.S. 929, 81 S.Ct. 1649, 6 L. Ed.2d 388 (1961).

4. Mr. Justice Fortas did not participate.

not intended by Congress to change the general level of patentable invention." Id. at 17, 86 S.Ct. at 693.

## II.

With this background of the requirement of "nonobviousness" in mind, I now turn to the specific invention in this case known as a "Data Plotting and Indicating Device." It is impossible to discuss the patent and prior art in any meaningful way without setting forth the relevant sketches as did the trial court.

The principal reference in the prior art is Hayek. Its essential elements are shown in the following drawing:

Hayek System

Number 11 is the light source, number 12 is a lens, number 13 is the opaque-covered glass, number 18 is the stylus which removes some of the opaque covering from the glass number 13, number 19 is the striker arm to which the stylus is attached, number 14 is another lens, and number 16 is the screen on which the line scraped by the stylus on the opaque-covered glass is projected.

It is apparent from examining this illustration that a drawback to Hayek is that the arm number 19, being made of solid metal, may cast a shadow on the screen. A further drawback to Hayek is that the arm number 19 tapped the opaque-covered glass plate number 13, rather in the manner of a "woodpecker," as the majority stated it. This created the danger that eventually the glass plate number 13 would crack under the repeated pounding.

The Fenske device, which the majority erroneously believes "conceptually" to be an improvement over Hayek, is shown in the diagram:

Number 47 is the light source, corresponding to number 11 in Hayek. Number 49 is a lens, corresponding to number 12 in Hayek. Number 40 is an opaque-covered glass plate, corresponding to number 13 in Hayek. Number 25 is the stylus which traces a line on the opaque-covered glass; it corresponds to number 18 in Hayek. Number 20 is the transparent glass plate to which the stylus is mounted; it corresponds to number 19 in Hayek.

It is apparent from examining this sketch that Fenske overcame two of the drawbacks of Hayek. Since the glass stylus carrier number 20 was transparent, it did not cast a shadow as did

the striker arm number 19 in Hayek. And since the stylus number 25 was in continuous contact with the opaque-covered glass number 40, there was less

Fenske Projector—Plaintiff's Exhibit 1

danger of breaking the opaque-covered glass; in Hayek, as we have stated, the striker arm number 19 continually pecked at the opaque-covered glass number 13.

I do not question, therefore, that Fenske represented an improvement over Hayek. But as the majority recognizes, the crucial question in this case is whether it was *obvious* in light of Hayek.[5] Surely, even one as mechanically unskillful as a judge can recognize that the shadow cast by the solid striker arm number 19 in Hayek would be virtually eliminated if the metal arm were made of glass or some other transparent material. Once this substitution of materials is made, it follows that the armature number 19 should be made sufficiently sturdy, since glass does not have the strength of metal. And, it is clear to me that placing the armature parallel to the opaque-covered glass was also obvious. We are told that in Hayek the arm tapped the glass like a "woodpecker." And, I suppose, it could be said that Fenske glided gracefully and softly like a Ruby-Throated Hummingbird.

As I read the majority opinion it seems to recognize that although each of these two steps separately considered may have been obvious, the total change from Hayek to Fenske rose to "non-obviousness." I cannot accept this conclusion. The two steps would be so obviously interrelated to a skilled mechanic, that the second would flow from the first like night from

5. In this connection I fail to see why the majority stresses that Fenske was of "substantial importance to our national security," except that it does make the patent appear more glamorous than the universal-sized cummerbund in Formal Fashions, supra. But in any event this would merely indicate that it was useful, not non-obvious.

day. The significant facts and our holding in Zoomar, Inc. v. Paillard Products, Inc., 258 F.2d 527 (2d Cir.), cert. denied, 358 U.S. 908, 79 S.Ct. 237, 3 L.Ed.2d 230 (1958), are apposite and support this comment. We held Zoomar's patent invalid as "obvious" because its "only objective or physical change of Michel's camera lens [the prior art] is the substitution of a motion picture camera for a still camera [here glass for metal] and aligning the front lens axis with the axis of the other lens systems [here aligning the stylus carrier and opaque-covered glass in parallel]. This modification 'is wanting in any unusual or surprising consequences from the unification of the elements here concerned.' Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152 [71 S.Ct. 127, 130, 95 L.Ed. 162.] * * *." Id. 258 F.2d at 529. See Formal Fashions, Inc. v. Braiman Bows, Inc., supra.[6] In short, it is difficult for me to understand how the substitution of a transparent plate number 20 for an opaque armature number 19 was anything but obvious to a skilled mechanic.

### III.

I am fortified in my view by a close analysis of the other cases cited in the opinion of my brothers. Rich Prods. Corp. v. Mitchell Foods, Inc., 357 F.2d 176 (2d Cir. 1966), cert. denied, 87 S.Ct. 46, and Application of Hortman, 46 CCPA 814, 264 F.2d 911 (1959), are relied on to bolster the crucial holding that the "conceptual improvement" of Fenske "represented a sufficient advance over Hayek to be patentable." These cases, however, I find easily distinguishable. In Rich Products both the prior art as revealed in the British patents and the patent in issue used compounds containing glyceryl monostearate, just as here both Hayek and Fenske used a stylus to remove opaque covering from a glass plate. But, with this the similarity ends. In Rich Products the chemical substance was used in entirely different forms in the two patents. More significantly, in the British patents it was "an alternate fat-soluble vehicle for the coloring constituent" while in the patent attacked in the suit it was an emulsifying agent. In other words, although the same chemical was used in both the prior art and in the patent there questioned, its functions in the two patents were quite different. This crucial difference is not present in our case for the functions of the respective component parts of Fenske and Hayek are the same.

*Hortman* is also not apposite. There the Court of Customs and Patent Appeals reversed the Patent Office which had refused to grant Hortman a patent. In the prior art, ironing boards had been made adjustable in height, but inventors were always concerned with making them more stable. Hortman modified the arrangement of the legs in the prior art so that his ironing board was apparently less sturdy, but in doing so he created room for one's knees to fit under the board. Thus the board could now be used for ironing while the operator was either sitting or standing, a feature none of the earlier ironing boards possessed. The prior art in that case did not suggest the problem which Hortman solved, and for that reason the court held his invention was not obvious. Hayek, however, clearly suggested the problem and the defects we have set forth were clear.[7]

6. It is interesting to note that in *Formal Fashions* an inventor who held a number of similar patents testified that he had been unable to develop the device in question. Despite this testimony, we concluded that the patent was invalid as obvious.

7. United States v. Adams, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966), further relied on by the majority, is also inapposite. There the Supreme Court held the patent for a wet battery valid, although "each of 'the elements of the Adams battery was well known in the prior art * * *" Id. at 51, 86 S.Ct. at 714. But the operating characteristics of the Adams battery, the Court said, were wholly unexpected to experts in the field. Indeed, the skilled experts expressed disbelief that Adams' invention would work. But, this is *toto caelo* from the obvious advantages of Fenske which were readily apparent.

The majority makes much of the fact that the patent was dormant. But it is clear that there was no evidence of any commercial need for such a device. Not until the SAGE computer system was introduced by the military did the manual grease pen technique so picturesquely described by the majority become too slow to keep up with the incoming flow of information. Indeed, appellee argues that Fenske was commercially successful primarily because of persistent sales pressures by its promoters. Therefore, I do not see how the eventual commercial success of Fenske in the context of this case can be given substantial weight on the issue of obviousness. It is true that commercial success may be some evidence that failure to produce the contested device sooner indicated it was not obvious. But here, commercial success depended on vigorous sales promotion and the independent development of SAGE.

In Formal Fashions, Inc. v. Braiman Bows, Inc., supra, and Dempster Brothers, Inc. v. Buffalo Metal Container Corp., 352 F.2d 420 (2d Cir. 1965), cert. denied, 384 U.S. 940, 86 S.Ct. 1458, 16 L.Ed.2d 539 (1966), we held patents invalid as "obvious" although evidence of commercial success was far stronger than it is here. And in those cases there had not been such vigorous sales promotion.

I also believe my brothers have mistakenly placed reliance on the doctrine of "presumptive validity" even though the Patent Office had before it the prior art when it granted the Fenske patent. Fenske conceded at oral argument that it had "a hard time" getting through the Patent Office. Its initial filing was rejected, its amended claims were allowed only in part, and its further amendments were turned down in a "final rejection."

Only after some further maneuverings and concessions was the Fenske patent allowed.[8]

Of even greater importance was the Patent Office policy to resolve all reasonable doubts in favor of the applicant. Indeed, Graham pointed out the "notorious difference between the standards applied by the Patent Office and by the courts." 383 U.S. at 18, 86 S.Ct. at 694. And the 1966 Report of the President's Commission on the Patent System commented that, "Little justification exists for giving weight to a decision made by the Patent Office when it resolves doubt in this manner, since it is passing the question of patentability on to the courts instead of exercising its judgment." Id. at 22. It seems to me that if this "presumption" is to be given weight, then why not attach more significance to the District Court Judge's comprehensive and "reasoned" opinion filed after a 19-day trial?

In short, the dormancy of the Hayek patent, the alleged commercial success of Fenske, and the presumption of validity of the Patent Office's grant are not factors which "in the circumstances of this case, tip the scales of patentability." Graham v. John Deere Co., supra, 383 U.S. at 36, 86 S.Ct. at 703. As we said in Formal Fashions, Inc. v. Braiman Bows, Inc., supra, "once it has been established by the prior art references that the difference between the patent in suit and this prior art is as insubstantial as it is in this suit, such secondary evidence cannot be held to demonstrate lack of obviousness." Id. 369 F.2d at 528.

This is just the wrong case in which to ease the high standards this Circuit has consistently demanded over the years for patent validity. The patent here in question was clearly obvious, and should

---

8. The Fenske patent application was filed in September 1955, and rejected in May 1956. Fenske amended his claims in November 1956, and some were allowed in June 1957. Fenske's further amendments of November 1957 were dismissed by the Patent Office in a "final rejection" of January 1958. In July 1958, Fenske made further amendments, asked for reconsideration of the final rejection, and gave notice of appeal to the Court of Patent Appeals. Finally, after a personal interview with the Patent Office Examiner and further amendments to his claims, Fenske's patent was allowed in September 1958.

therefore be declared invalid. If confirmation was necessary that occasionally a patent will get by in this court,[9] this was just not the case to prove the point.

9. The high standards required for patentability in this Circuit are illustrated by the following statistics: 65.6% of the patents reviewed by this Court between 1953 and 1963 were declared invalid for lack of invention. The national average of all Courts of Appeals was 44.6%. The Encyclopedia of Patent Practice and Invention Management 24 (Calvert ed. 1964).